UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEBORAH ELLEN FURLO,

                Plaintiff,                Case No. 14-cv-14392

v                                                    Honorable Thomas L. Ludington

CAROLYN W. COLVIN, acting
Commissioner of social security,

                Defendant.
_____/

**ORDER OVERRULING PLAINTIFF'S OBJECTIONS, ADOPTING THE REPORT AND RECOMMENDATION, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND AFFIRMING THE DECISION OF THE COMMISSIONER**

      Magistrate Judge Patricia T. Morris authored a Report and Recommendation addressing Plaintiff Deborah Ellen Furlo's motion for summary judgment and Defendant commissioner of social security Carolyn W. Colvin's motion for summary judgment. ECF Nos. 13, 17. In the report and recommendation, Judge Morris recommends denying Plaintiff's motion for summary judgment and granting Defendant's motion for summary judgment. ECF No. 19. Plaintiff timely filed objections. ECF No. 21. Plaintiff Furlo's objections will be overruled and the report and recommendation will be adopted. Accordingly, Plaintiff's motion for summary judgment will be denied, Defendant's motion for summary judgment will be granted, and Plaintiff's claims will be dismissed with prejudice.

**I.**

      Plaintiff Deborah Furlo was 50 years old at the most recent administrative hearing. Tr. 19, 32. Plaintiff's highest education level is the 11th grade, and she does not have a driver's license. Tr. 34. She testified that she has two children from a previous marriage, ages 25 and 23,

but that she divorced her husband because of physical abuse. Tr. 33, 47. At the time of her ALJ hearing on July 30, 2013, Plaintiff testified that she was currently living in a duplex with her boyfriend and his father. Tr. 33, 47-48.

### A.

Plaintiff Furlo has a notably sparse work history. Furlo's most recent full-time employment was in 1998, at which time she worked at a motel cleaning rooms and doing laundry. Tr. 35-36. According to Plaintiff, that employment lasted a while, but she could not recall specifically how long she held that job.

### B.

Plaintiff Furlo has a number of ongoing medical issues, including Hepatitis C, arthritis, depression, and substance abuse. Furlo has seen numerous doctors regarding these medical issues, including her primary care provider, Nurse Practitioner Barbara Kish, Psychologist Nathalie Menendes, Psy.D., Doctor Siva Sankaran, M.D., and Rheumatologist Albert Manlapit, M.D. Additionally, Doctor Bruce Douglass, Ph.D. performed a mental residual functional capacity assessment on behalf of the state on September 4, 2012 but did not personally examine Furlo.

### i.

Furlo was diagnosed with Hepatitis C sometime during or before 2005. Tr. 261. Pursuant to an October 3, 2012 state medical examination, Dr. Sankaran noted that Furlo had no current problems related to hepatitis C such as nausea, vomiting, or diarrhea, or chronic liver disease. Tr. 211-12.

### ii.

Furlo has been diagnosed with joint pain in her neck and hands. In April of 2011, Furlo's primary care provider N.P. Kish found that Furlo had arthralgia in her hands. Dr. Sankaran found that Plaintiff struggled with joint pain during the October 3, 2012 state medical exam. He noted that Furlo had been to the emergency room at Covenant Health Center about two years earlier, where she underwent a number of X-Rays. Tr. 210. Based on those X-rays, Furlo had been informed that she had arthritis in her neck and that she might have early degenerative arthritis in her hands. *Id.* Dr. Sankaran concluded that, despite Furlo's alleged history of arthritis, clinical data showed no limitation of motion in her neck and no arthritis in her hands. *Id*. He further concluded that she had good intact grip, did not use a cane or walker, had no difficulty doing day-to-day chores, and was able to walk a mile without difficulty. Tr. 211. He found that Furlo was able to open a jar, button clothing, write legibly, pick up a coin, and tie shoelaces with either hand. Tr. 212.

In a subsequent November 2012 visit to N.P. Kish, N.P. Kish determined that Furlo had rheumatoid arthritis, and referred her to Dr. Manlapit, a rheumatologist. Furlo saw Dr. Manlapit on April 18, 2013. Tr. 261. At that time, Furlo denied any weight loss, anorexia, fever, or chills, but noted that she was fatigued. *Id.* In a report, Dr. Manlapit noted that both Furlo's wrists were slightly irritable on extension, and that her right wrist was more tender than her left. Tr. 262. She determined that Furlo had "Mild Mixed Cryoglobulinemia associated with inflammatory type arthralgia and paresthesias but without any renal involvement, palpable purpura, or hepatic involvement." Dr. Manlapit concluded that Furlo had "no distinct features of Rheumatoid Arthritis and her CCP antibody is negative." *Id.*

**iii.**

Furlo also struggles with mental health. Furlo was examined by Psychologist Menendes, on August 30, 2012. Tr. 205. In her report, Dr. Menendez noted that Furlo was diagnosed with depression years ago and that Furlo slept a lot, that her appetite was poor, and that she was often irritated. Menendez also noted that Furlo had some suicidal ideation and often felt "hopeless and helpless." Furthermore, Menendez noted that Furlo had poor motivation, low energy, and difficulty concentrating, and did not socialize much. *Id*. Despite these limitations, Dr. Menendez found that Furlo was able to function independently and able to "perform and remember concrete, repetitive, and tangible tasks such as activities of daily living and housekeeping duties." Tr. 206-208. Dr. Menendez also found:

> [Furlo] likely has the capability to perform complex or multi-step tasks, make independent work related decisions, and engage in abstract thinking and work that is not routine. However, her symptoms of depression will interfere with her ability to perform any job duty, simple or complex, on a consistent and reliable basis. Further, she would likely not handle frustrating situations well and should not be expected to be able to cope with stress or difficult situation in the work setting. Her social skills are adequate and she should be able to interact appropriately with others.

Tr. 208.

Doctor Bruce Douglass, Ph.D. performed a mental residual functional capacity assessment on behalf of the state on September 4, 2012, but did not personally examine Furlo. Tr. 69-71. Based on the medical evidence, Dr. Douglass found that Furlo had a severe affective disorder that moderately restricted her daily living, social functioning, and concentration, persistence or pace. Tr. 68. Dr. Douglass also found that there was no evidence of repeated episodes of decompensation, or any evidence of "C" criteria. Dr. Douglass found Furlo's claims that she was very sick with hepatitis C and had "really bad" arthritis in her neck and hands to be unsupported by the evidence. Tr. 69. Dr. Douglass accordingly found her claims to be "Not credible." *Id.*

Dr. Douglass concluded that "[c]oncentration, pace, and persistence are mildly/moderately impaired, and workplace performance will vary with mood and/or distractibility in demanding work settings." *Id*. He also explained that "[s]ocial functioning is moderately restricted, and the claimant might not work well with the public. She will work best alone or in small, familiar groups without significant contact with the public. Self care is intact." *Id*. Ultimately, Dr. Douglass determined that Furlo had the capacity to perform routine, 2-step tasks on a sustained basis. *Id*.

### iv.

Finally, Furlo has a history of substance abuse. Following the October 3, 2012 appointment, Dr. Sankaran noted that Furlo drank a couple of glasses of vodka twice a week. Dr. Menendes noted that Furlo had abused alcohol, heroin, cocaine, and prescription medications in the past, and that Furlo had been in substance abuse treatments about four times in the past. Tr. 205-06.

In a January 21, 2013 episode, emergency medical services were called to Furlo's home after she had been drinking all day and abusing recently prescribed medications. Tr. 256. At the time Furlo complained of depression and suicidal thoughts, and so she was taken to the hospital where she tested positive for alcohol, benzodiazepine, and cocaine. Tr. 240. She was ultimately diagnosed with acute alcohol intoxication, acute generalized malaise, acute generalized pain, and acute cocaine abuse. Tr. 41. On July 10, 2013, N.P Kish informed Furlo that she could no longer receive any narcotic medications due to her intermittent cocaine use. Tr. 286.

### A.

On June 28, 2012, Plaintiff filed the present claim for Social Security Insurance, alleging that she became unable to work on June 19, 2012, when she was 49 years old. Tr. 119. Under

the Social Security Act ("The Act"), a claimant is entitled to disability benefits if she can demonstrate that she is in fact disabled. *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Disability is defined by The Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 416.05. Plaintiff Furlo carries the burden of establishing that she meets this definition. 42 U.S.C. §§ 423(d)(5)(A); *see also Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 459 (6th Cir. 2012).

Corresponding federal regulations outline a five-step sequential process to determine whether an individual qualifies as disabled:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.

*Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 719 (6th Cir. 2012) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)). Through Step Four, Furlo bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work. At Step Five, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

**B.**

The ALJ conducted a hearing and considered Furlo's application for benefits de novo on July 30, 2013. Tr. 30. At the hearing, the ALJ questioned Furlo about her past work experience and medical history. A Vocational Expert testified that, as performed, Plaintiff's past job as a cleaner was a strength level of medium, but that under the *Dictionary of Occupational Titles* ("DOT") it is a strength level of light. Tr. 59. The ALJ then posed a hypothetical to the Vocational Expert:

> I'd like you to assume a hypothetical individual with the past jobs you described. Further assume this individual would be limited to light work. In addition, she would have to avoid extreme vibration and limit the use of her upper extremities to frequent as opposed to constant. She would be limited to simple, routine tasks with no interaction with the public, occasional interaction with co-workers and supervisors.

Tr. 60. The Vocational Expert replied that, according to the DOT, such an individual could perform past work consistent with Plaintiff's. *Id*. He further testified that the hypothetical individual could perform the following work having a strength level of light: (1) a collator operator, of which there are 225,310 jobs nationally and 5,650 in Michigan; (2) a lining scrubber, of which there are 419,840 jobs nationally and 17,940 jobs in Michigan; and (3) a screen tacker, of each of which there are 218,740 jobs nationally and 14,470 jobs in Michigan. Tr. 60-61.

The ALJ then asked the Vocational Expert to imagine a hypothetical individual with the previously described impairments who also "would not have the persistence, pace or concentration to perform work activities on an eight-hour day, five-day-a-week, 40-hour work week or equivalent schedule and would be absent three or more days a month due to impairments." Tr. 61. The Vocational Expert testified that such an individual would be precluded from working. Tr. 61-62.

**C.**

In a decision issued on August 16, 2013, the ALJ denied Plaintiff's claim. The ALJ found that neither Furlo's Hepatitis C nor her drug use was a severe impairment under Step Two of the SSA evaluation process. The ALJ found that Furlo's affective disorder and joint pain constituted severe impairments under Step Two. Tr. 14-18. However, under Step Three the ALJ concluded that Furlo did not have an impairment or combination of impairments that met or was equal to the severity of one of the listed impairments in 20 CFR 404A Appx 1. Tr. 16-17. Under Step Four the ALJ found that Furlo had the residual functional capacity to perform light work, but that she must avoid extreme vibration and limit the use of her upper extremities to frequent as opposed to constant. *Id*. The ALJ further found that Furlo was limited to "performing simple routine tasks with no interaction with the public and only occasional interaction with co-workers and supervisors." Tr. 18-19. Accordingly, the ALJ determined that Furlo was capable of performing her past relevant work as a cleaner. Tr. 22. Alternatively, under Step Five the ALJ concluded that Furlo could perform other light work such as a collator operator, a lining scrubber, or a screen tacker. Tr. 23. The ALJ accordingly determined that Furlo was not disabled under the Act.

In reaching her decision, the ALJ relied on the medical testimony of several medical professionals. She gave "great weight" to the medical testimony of Dr. Douglass, but only gave "some weight" to the opinion of Dr. Menendes, noting that Dr. Menendes had failed to fully assess "the impact of the claimant's drug and alcohol use on her mental impairment." Tr. 21.

**D.**

The Commissioner adopted the ALJ's decision on September 16, 2014. Plaintiff Furlo then filed the instant suit on November 14, 2014, seeking review of the Commissioner's unfavorable decision. The matter was referred to Magistrate Judge Patricia T. Morris on

- 8 -

November 17, 2014. After both parties filed motions for summary judgment, the Magistrate Judge issued a report and recommendation in which she recommended denying Furlo's motion for summary judgment and granting Defendant Commissioner's motion for summary judgment.

## II.

Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a Magistrate Judge's report and recommendation. See Fed. R. Civ. P. 72(b)(2). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted). If objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). De novo review requires at least a review of the evidence before the Magistrate Judge; the Court may not act solely on the basis of a Magistrate Judge's report and recommendation. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the Court is free to accept, reject, or modify the findings or recommendations of the Magistrate Judge. *See Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002). Plaintiff Furlo now raises six objections.

## III.

This Court must affirm the Commissioner's conclusions "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citations omitted). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

### A.

Plaintiff Furlo first objects to the Magistrate Judge's conclusion that Furlo could perform her past relevant work. Furlo asserts that the ALJ erred in ignoring the conclusions of Dr.

Menendes that Furlo's symptoms of depression would interfere with her ability to perform any job on a regular basis, and that Furlo would likely not be able to handle frustrating situations or stress. Furlo therefore argues that the ALJ's first hypothetical question was not reflective of and supported by sufficient evidence of record because it did not reflect Plaintiff's inability to focus, her ongoing depression, her suicidal ideation, her drug and alcohol abuse, and her inability to be consistently present at work. Furlo concludes that, because the first hypothetical question was defective, Defendant has failed to establish that Furlo could perform either her past relevant work or the light work enumerated by the Vocational Expert. This objection goes to Steps Four and Five of the analysis, in which the ALJ determined that Furlo could perform her past relevant work as a cleaner as well as other light work.

To the extent that Furlo argues that the ALJ needed to include her drug and alcohol abuse in her first hypothetical, her objection is misplaced. The Act expressly provides that "an individual shall not be considered to be disabled… if alcoholism or drug addiction would…be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C.A. § 1382c(a)(3)(J). Therefore the ALJ did not err in failing to include any reference to Furlo's substance abuse issues in her first hypothetical, as any material consideration of those issues would have precluded Furlo from receiving benefits as a matter of law. Moreover, under Step Two the ALJ specifically found that Furlo's drug use was not a severe impairment because no medical evidence suggested that it imposed any limitations on Furlo's ability to "perform basic work activities." Tr. 17.

Furlo's argument that the ALJ was required to adopt the findings of Dr. Menendes is also without merit. As explained by the regulations, "[a]lthough we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any

impairment(s) … your residual functional capacity…or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner." 20 CFR § 404.1527(d)(2). The regulation further provides that the Commissioner will not "give any special significance to the source of an opinion on issues reserved to the Commissioner." *Id*. at (d)(3).

Here, the ALJ's determination that Furlo could perform light work limited to simple, routine tasks with no interaction with the public and occasional interaction with co-workers and supervisors was supported by substantial evidence in the record. Specifically, the ALJ's determination was supported by Dr. Douglass's conclusion that Furlo had the capacity to perform routine, 2-step tasks on a sustained basis. Dr. Douglass's additional conclusion that Furlo's concentration, pace and persistence were mildly/moderately impaired and that her social functioning was moderately restricted are not in conflict with this finding, since mild or moderate impairment is not severe impairment. Because the ALJ's first hypothetical question was supported by substantial evidence, Furlo's first objection is without merit.

### B.

Furlo's next objection goes to the ALJ's determination that Furlo's arthritis, alcoholism, and cocaine abuse were not severe impairments at Step Two. Furlo also argues that the Magistrate Judge erred in affirming the ALJ's determination that Furlo's joint pain did not meet one of the impairments listed at 20 C.F.R. Pt. 404, Subpt. P app 1.

With regard to Furlo's alcohol and drug abuse, Furlo's second objection is without merit for the same reason that her first objection was without merit: The Act expressly provides that "an individual shall not be considered to be disabled… if alcoholism or drug addiction would…be a contributing factor material to the Commissioner's determination that the

individual is disabled." 42 U.S.C.A. § 1382c(a)(3)(J). Accordingly, any finding that Furlo's alcohol or cocaine use was a material factor in her alleged disability would disqualify her from benefits. Any error in this regard was therefore harmless to Furlo.

With regard to Furlo's alleged arthritis, the ALJ did find that Furlo's joint pain was a severe impairment at Step Two. Tr. 16. The ALJ properly relied on the opinions of experts in refusing to "diagnose" Furlo with rheumatoid arthritis. As explained by the Magistrate Judge, the Sixth Circuit has noted that, "ALJ's must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Furlo's second objection is without merit and will be overruled.

## C.

Plaintiff's third objection is related to her second. She argues that the Magistrate Judge incorrectly affirmed the ALJ's determination that Furlo's joint pain did not meet or equal the criteria of Listed Impairment 14.09, which addresses inflammatory arthritis. In order to meet the criteria of 14.09, the alleged arthritis must result in an extreme limitation. In other words, inflammatory arthritis that does not result in an extreme limitation does not qualify as an impairment under 14.09. In order to qualify as an impairment, a Plaintiff's condition must meet the following criteria:

> B. Inflammation or deformity in one or more major peripheral joints with:
>
>    1. Involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and
>
>    2. At least two of the constitutional systems and signs (severe fatigue, fever, malaise, or involuntary weight loss).
>
> OR

    D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level

        1. Limitations of activities of daily living.

        2. Limitation in maintaining social functioning.

        3. Limitation in completing tasks in a timely manner due to deficiencies in the concentration, persistence, or pace.

20 C.F.R. pt. 404 Subpt. P, app 1, § 14.09B, D.

Furlo repeats her previous arguments that she qualifies under 14.09B because N.P. Kish diagnosed her with rheumatoid arthritis. However, the ALJ did not err in choosing not to rely on N.P. Kish's opinion. As a nurse practitioner, N.P. Kish is not considered an "acceptable medical source" under 20 U.S.C. § 404.1513(a). Instead, a nurse practitioner is an "other source" under 20 U.S.C. § 404.1513(d). As such, NP Kish is not a "treating source" whose opinion is entitled to controlling weight. *See* 20 U.S.C. § 404.1502; Social Security Ruling 06-03P, 2006 WL 2329939 *2 (August 9, 2006) ("[O]nly 'acceptable medical sources' can be considered treating sources… whose medical opinions may be entitled to controlling weight."). Although the ALJ may use evidence from nurse practitioners to show the severity of an impairment and how it affects the individual's ability to function, information from nurse practitioners "cannot establish the existence of a medically determinable impairment." SSR 06-03P WL 2329939 at *2. The ALJ properly relied on substantial evidence from acceptable medical sources, Dr. Sankarin and Dr. Manlapit, in refusing to classify Furlo's joint pain as rheumatoid arthritis.

Furlo further argues that the ALJ's reliance on Dr. Sankarin and Dr. Manlapit's opinions was improper because "inflammatory arthritis is a condition that waxes and wanes, a condition of flare-ups and remissions…" Again, however, it is for acceptable medical sources to determine the presence and severity of medical issues: not for the ALJ, and not for Plaintiff Furlo.

Furlo also suggests that the ALJ was required to conclude that Furlo had qualifying arthritis because Furlo showed the ALJ swollen hands at the hearing. Swollen hands are not solely a symptom of rheumatoid arthritis, but instead can result from any number of causes, some qualifying as listed impairments and others not qualifying as listed impairments. Because under binding Sixth Circuit precedent the ALJ could not play doctor and make medical findings, the ALJ did not err in refusing to attribute Furlo's swollen hands to rheumatoid arthritis in the absence of any acceptable medical source testimony making such a diagnosis.

Finally, Furlo argues that the Magistrate Judge erred in affirming the ALJ's determination that Furlo did not have arthritis. Furlo argues that the ALJ's decision that Furlo did not have arthritis was not supported by substantial evidence because Dr. Manlapit found that Furlo suffered from some form of inflammatory arthralgias and paresthesias. To the contrary, these findings do support the ALJ's findings. Arthralgia is defined as "severe ache or pain in a joint, *without swelling or other signs of arthritis*." *Arthralgia*, OXFORD CONCISE MED. DICTIONARY (9th ed. 2015) (emphasis added). *C.f. arthritis,* OXFORD CONCISE MED. DICTIONARY (9th ed. 2015) ("inflammation of one or more joints, characterized by pain, swelling, warmth, redness of the overlying skin, and diminished range of joint motion.").[1] Because Dr. Manlapit determined that Furlo had arthralgia, as opposed to determining that she had arthritis, her report supports the ALJ's conclusion. The ALJ's conclusion was further supported by Dr. Sankaran's conclusions that Furlo had no limitation of motion in her neck and no arthritis in her hands. Furlo's third objection will thus be overruled.

**D.**

---

[1] Parethesia is defined as "an abnormal sensation such as tingling, burning, prickling, pins and needles, or numbness in an area of the skin or a part of the body. *Paraesthesia,* OXFORD DICTIONARY OF PYSCHOLOGY (3d ed. 2008).

In her fifth objection[2] Plaintiff Furlo argues that the Magistrate Judge erred in affirming the ALJ's conclusion that Furlo does not meet the criteria of Listed Impairment 12.04. Furlo argues that the ALJ erred in affording greater weight to the testimony of Dr. Douglass, a non-examining source, over Dr. Menedes, an examining source. Furlo also argues that Dr. Douglass was biased against her.

The Magistrate Judge fully addressed Furlo's argument that the ALJ erroneously gave greater weight to the testimony of Dr. Douglass as follows:

> Plaintiff is correct that examining physicians are generally entitled to more deference than non-examining physicians. *See* 20 C.F.R. § 404.1527; *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013); *McKnight v. Comm'r of Soc. Sec.*, No. 11-13376, 2012 WL 3966337, at *13 (E.D. Mich. Sept. 10, 2012) ("An examining physician's medical opinion is entitled to greater deference than a nonexamining source, such as the Department of Disability Service consultants."). However, as Defendant points out, "'in appropriate circumstances, opinions from state agency medical and psychological consultants . . .may be entitled to greater weight than the opinions of treating or examining sources.'" *Brooks*, 531 F.App'x 642 (*citing* SSR 96-6p, 1996 SSR LEXIS 3, at *7)). Here the ALJ determined that Dr. Douglass, the nonexamining consultant was entitled to greater deference than the examining consultant because Dr. Menendes "failed to full[y] assess the impact of the claimant's drug and alcohol use on her mental impairment." (Tr. 21.) He further found that Dr. Douglass's opinion was consistent with the medical evidence and the record as a whole. (Tr. 20-21.) Thus the ALJ cited adequate reasons for giving greater weight to the opinion of Dr. Douglass. (Doc. 18, at 6.)

ECF No. 19, 37. The Magistrate Judge also addressed Furlo's claim of bias:

> In evaluating a claim of bias the "court must begin with the presumption that [ALJ's] exercise their power with honesty and integrity." *Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 363 (6th Cir. 2004) (internal quotations omitted). "The burden of overcoming the presumption of impartiality rests on the party making the assertion of bias, and the presumption can be overcome only with convincing evidence that a risk of actual bias or prejudgment is present." *Id.* at 364 (internal quotations omitted).
>
> Here, Plaintiff clearly does not meet her burden. The claims of impartiality and prejudice raised throughout her brief and her reply are merely speculation. The

---

[2] Plaintiff has not raised a fourth objection in her objections.

- 15 -

>only evidence she supplies is the ALJ's deference to the opinion of a non-examining consultant over an examining one. However, as discussed above the ALJ did not err in this regard. Thus Plaintiff's claim that the ALJ was biased is unfounded.

ECF No. 19, 37-39. Because the ALJ provided a basis for giving more weight to the testimony of Dr. Douglass than to the testimony of Dr. Menendes, the ALJ's reliance on Dr. Douglass's testimony was proper. The Magistrate Judge's opinion in this regard is adopted in full, and Furlo's objection will be overruled.

### E.

Furlo next objects the Magistrate Judge's affirmance of the ALJ's finding that Furlo did not meet the B criteria of Listed Impairment 12.04. Furlo argues that the testimony of Dr. Menendes supports a finding that Furlo's activities, social functioning, and focus were restricted such that she could not engage in gainful employment. As explained above, however, the ALJ did not err in giving limited weight to the testimony of Dr. Menendes. The ALJ's determination that Furlo did not meet the B criteria of Listed Impairment 12.04 is supported by substantial evidence, and so Furlo's sixth objection will be overruled.

### F.

Finally, in her seventh objection, Furlo argues that the Magistrate Judge erred in finding that Plaintiff had past relevant work because she never had sufficient FICA income from her work as a cleaner. However, as noted in Defendant's reply brief, the Act and related regulations place no such restriction on the definition of relevant work. The eastern district of Texas case cited by Plaintiff has no bearing on this case, as it addresses Title II disability insurance benefits, not Title XVI supplemental insurance benefits. As explained by the Supreme Court in *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988), "Title II is an insurance program. Enacted in 1935, it provides old-age, survivor, and disability benefits to insured individuals irrespective of financial

need…. Title XVI is a welfare program. Enacted in 1972, it provides SSI benefits to financially needy individuals who are aged, blind, or disabled *regardless of their insured status*." (emphasis added).

Furlo also argues that the ALJ erred in finding that she had performed her previous work as a cleaner at a medium-exertion level, despite the fact that cleaning work is generally performed as light-exertion work. However, any error in the ALJ's finding that Furlo performed her cleaning work at a medium-exertion level is harmless for two reasons. First, because the ALJ expressly agreed with Vocational Expert Hostetler's testimony that Furlo could perform cleaning work "as it is generally performed"; and second, because the ALJ found that Furlo could perform a variety of other light-exertion work available in the state and national economies under Step Five. Tr. 22.

## VII.

Because the ALJ reached her decision using correct legal standards and because those findings were supported by substantial evidence, the Court must affirm it, even if reasonable minds could disagree on whether the individual was disabled or substantial evidence could also support a contrary result. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2006) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.").

Accordingly, it is **ORDERED** that Plaintiff Furlo's objections, ECF No. 21, are **OVERRULED**.

It is further **ORDERED** that the report and recommendation, ECF No. 19, is **ADOPTED**.

It is further **ORDERED** that Plaintiff Furlo's motion for summary judgment, ECF No. 13, is **DENIED**.

It is further **ORDERED** that Defendant Colvin's motion for summary judgment, ECF No. 17, is **GRANTED**.

It is further **ORDERED** that the Commissioner of Social Security's decision is **AFFIRMED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: January 13, 2016

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 13, 2016.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager